IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JOELLE A. LEO,

                    Plaintiff,

vs.                                    Case No. 14-1255-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

        This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits.  The matter has been fully briefed by the

parties.

**I.   General legal standards**

        The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's

decision to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 30, 2013, administrative law judge (ALJ) James Harty issued his decision (R. at 68-80). Plaintiff alleges that she had been disabled since April 1, 2011 (R. at 68). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2016 (R. at 70). At

4

step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 70).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 70).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 72).  After determining plaintiff's RFC (R. at 72), the ALJ found at step four that plaintiff could perform past relevant work (R. at 78).  In the alternative, at step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 79-80).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 80).

## III.  Did the ALJ err in finding that plaintiff's impairment does not meet listed impairment 1.02A?

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). In order for the plaintiff to show that his impairments match a listing, plaintiff must meet "all" of the criteria of the listed impairment.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in original).

Listed impairment 1.02A states as follows:

*Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:

A.  Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

1.00B2b *What we mean by Inability to Ambulate Effectively*

(1) *Definition*. **Inability to ambulate effectively means an extreme limitation of the ability to walk**; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. **Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities...**

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school. **Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public**

> **transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.** The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2015 at 463, 459, emphasis added).

In his decision, the ALJ stated that although plaintiff has musculoskeletal impairments, she does not have an "extreme" limitation in the ability to walk as defined in section 1.02, and also noted that plaintiff was not prescribed the use of a cane until February 8, 2013. The ALJ also found that the evidence does not indicate an inability to ambulate effectively until then, and she had her right hip replaced on March 12, 2013 (R. at 72).

As noted above, plaintiff has the burden to present evidence establishing that her impairment meets or equals a listed impairment. Plaintiff, in her brief, discusses medical evidence, which, in her opinion supports a finding that her impairment meets listed impairment 1.02A (Doc. 13 at 6-14). However, plaintiff fails to point to any medical evidence or medical opinion evidence that clearly and unambiguously states that her impairments meet or equal listed impairment 1.02A. There is no statement in the medical records that plaintiff has

an extreme limitation in the ability to walk, or that meets one
of the other definitions of inability to ambulate effectively
that has lasted or can be expected to last for one year.[1]
Although the medical records cited by plaintiff might be
interpreted to indicate an inability to ambulate effectively,
those records are open to more than one interpretation.

The court will not reweigh the evidence or substitute its
judgment for that of the Commissioner.  Hackett v. Barnhart, 395
F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d
903, 905, 908, 909 (10th Cir. 2002).  Although the court will
not reweigh the evidence, the conclusions reached by the ALJ
must be reasonable and consistent with the evidence.  See Glenn
v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must
affirm if, considering the evidence as a whole, there is
sufficient evidence which a reasonable mind might accept as
adequate to support a conclusion).  The court can only review
the sufficiency of the evidence.  Although the evidence may
support a contrary finding, the court cannot displace the
agency's choice between two fairly conflicting views, even
though the court may have justifiably made a different choice

---

[1] Disability is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  20 C.F.R. § 404.1505(a).  If a claimant has a severe impairment, then the question is asked--does that impairment meet or equal a listed impairment.  If so, and if it has lasted or can be expected to last for at least 12 months, the person is considered disabled and there is no need to proceed further.  Kemp v. Bowen, 816 F.2d 1469, 1474 (10th Cir. 1987).

had the matter been before it de novo.   Oldham v. Astrue, 509
F.3d 1254, 1257-1258 (10th Cir. 2007).

    On June 14, 2012, Dr. Kindling opined that plaintiff can
sit for 6 hours and stand and/or walk for 2 hours in an 8 hour
workday (R. at 155-158).  Dr. Harper affirmed that finding on
July 2, 2012 (R. at 514).  Their opinions clearly do not support
a finding that plaintiff is unable to ambulate effectively.  No
medical opinion or report contradicts or disagrees with their
RFC opinions.

    The ALJ correctly noted that a cane was not prescribed
until February 8, 2013 (R. at 72, 565).  The ALJ found that the
evidence does not indicate an inability to ambulate effectively
until then, and further noted that her right hip was replaced on
March 12, 2013 (R. at 72).  The ALJ stated that the records
indicated that plaintiff was doing well after surgery and denied
any pain (R. at 75).  A record from April 29, 2013 stated that
plaintiff is doing relatively well, although she has some
swelling.  She walks with an antalgic gait favoring her right
lower extremity, and the incision from the surgery was healing
well.  Dr. Cusick stated that she has "acceptable range of
motion of her hip" (R. at 1076).  Although the evidence may
support a contrary finding, there is sufficient evidence in the
record to allow a reasonable factfinder to conclude that that
plaintiff did not meet or equaled listed impairment 1.02A for a

period that has lasted or can be expected to last for at least 12 months.

## IV.  Are the ALJ's RFC findings supported by substantial evidence?

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful

review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ limited plaintiff to less than a full range of sedentary work, with various postural, and environmental limitations (R. at 72). Those findings parallel the opinions of Dr. Kindling (R. at 155-158), which were affirmed by Dr. Harper (R. at 514). The ALJ gave significant weight to their opinions (R. at 77). There are no medical opinions in the record that plaintiff had greater or additional limitations which were not set forth in the ALJ's RFC findings, and none of the medical records clearly indicate that plaintiff had limitations not reflected in the ALJ's RFC findings.

The court finds no clear error in the ALJ's summary of the medical evidence.  The ALJ acknowledged that plaintiff's knees were a severe impairment (R. at 70), and the report of Dr. Kindling, relied on by the ALJ in making his RFC findings, noted that plaintiff had advanced osteoarthritis of both knees (R. at 157).  The ALJ correctly noted that the medical records of January 24, 2013 indicate her "knees really are not that bad" (R. at 75, 539).  The medical record from that date noted deformities in both knees, but also stated that she still maintains reasonably good motion.  It indicated that the first treatment would be a total hip arthroplasty, and then noted she would need to lose weight to get her knees done (R. at 539).  The ALJ's conclusion that the evaluation of the knees did not indicate significant concern (R. at 77) is not clearly erroneous in light of the medical report from January 24, 2013.

However, in determining a plaintiff's RFC, the ALJ must also evaluate plaintiff's credibility.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the

plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

In his credibility findings, the ALJ cited to plaintiff's function reports (R. at 73, 76), and stated the following:

> The claimant's activities are not significantly limited.  She is generally able to care for herself and her home.  She prepares light meals and does the laundry. She drives short distances, shops and has handled the finances.  She spends time on the computer, with friends, watching television and playing with her large dogs.

(R. at 76).

First, according to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c) (2013 at 399).  Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing,

cooking, mopping and sweeping.  The ALJ concluded that
claimant's allegations of disabling pain were inconsistent with
her reports of her normal daily activities and were therefore
not deemed credible.  The court found that substantial evidence
did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her
> home and does her best to engage in ordinary
> life activities is not inconsistent with her
> complaints of pain, and in no way directs a
> finding that she is able to engage in light
> work**.  As we said in McCoy v. Schweiker, 683
> F.2d 1138, 1147 (8th Cir.1982) (en banc),
> the test is whether the claimant has "the
> ability to perform the requisite physical
> acts day in and day out, in the sometimes
> competitive and stressful conditions in
> which real people work in the real world."
> In other words, evidence of performing
> general housework does not preclude a
> finding of disability.  In Rainey v. Dep't
> of Health & Human Servs., 48 F.3d 292, 203
> (8th Cir.1995), the claimant washed dishes,
> did light cooking, read, watched TV, visited
> with his mother, and drove to shop for
> groceries.  We noted that these were
> activities that were not substantial
> evidence of the ability to do full-time,
> competitive work. In Baumgarten v. Chater,
> 75 F.3d 366, 369 (8th Cir.1996), the ALJ
> pointed to the claimant's daily activities,
> which included making her bed, preparing
> food, performing light housekeeping, grocery
> shopping, and visiting friends.  We found
> this to be an unpersuasive reason to deny
> benefits: **"We have repeatedly held...that
> 'the ability to do activities such as light
> housework and visiting with friends provides
> little or no support for the finding that a
> claimant can perform full-time competitive
> work.'"** Id. (quoting Hogg v. Shalala, 45
> F.3d 276, 278 (8th Cir.1995)). Moreover, we
> have reminded the Commissioner

> **that to find a claimant has the**
> **residual functional capacity to**
> **perform a certain type of work,**
> **the claimant must have the ability**
> **to perform the requisite acts day**
> **in and day out, in the sometimes**
> **competitive and stressful**
> **conditions in which real people**
> **work in the real world...The**
> **ability to do light housework with**
> **assistance, attend church, or**
> **visit with friends on the phone**
> **does not qualify as the ability to**
> **do substantial gainful activity**.
>
> Thomas v. Sullivan, 876 F.2d 666, 669 (8th
> Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

In Hughes v. Astrue, 705 F.3d 276 (7th Cir. 2013), the court

stated:

> [The ALJ] attached great weight to the
> applicant's ability to do laundry, take
> public transportation, and shop for
> groceries. We have remarked the naiveté of
> the Social Security Administration's
> administrative law judges in equating
> household chores to employment. "The
> critical differences between activities of
> daily living and activities in a full-time
> job are that a person has more flexibility
> in scheduling the former than the latter,
> can get help from other persons (... [her]
> husband and other family members), and is
> not held to a minimum standard of
> performance, as she would be by an employer.
> The failure to recognize these differences
> is a recurrent, and deplorable, feature of
> opinions by administrative law judges in
> social security disability cases [citations
> omitted]."

705 F.3d at 278.   Therefore, the fact that plaintiff prepares light meals, does the laundry, drives short distances, shops, spends time on the computer, with friends, watching television, and playing with her dogs does not demonstrate, of itself, that plaintiff can work at a competitive level over an 8 hour day. As for watching television, that is hardly inconsistent with allegations of pain and related limitations.   See Krauser, 638 F.3d at 1333.

The ALJ also relied on the fact that plaintiff was making preparations to travel to Canada to indicate that plaintiff is not as limited in her daily activities as she alleges (R. at 76).   However, it is well-settled law that a claimant need not prove she is bedridden or completely helpless to be found disabled.   Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005). One does not need to be utterly or totally incapacitated in order to be disabled.   Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992).   The mere fact that she is making plans to travel, of itself, is not inconsistent with allegations of pain and related limitations.

Second, and more troubling, is the ALJ's mischaracterization of plaintiff's daily activities based on two function reports.   Although plaintiff indicates that she prepares meals, she indicated it was infrequent or not often (R.

at 284, 329).  She also stated that if it takes her more than 3-5 minutes, she has to stop and rest (R. at 284), and has to rest when she makes herself a simple sandwich (R. at 329).  Although plaintiff indicates she does laundry, she indicated that she can only load clothes in the washer, and must sit to fold clothes. She stated that unloading clothes is too painful.  She is unable to keep walking back and forth to the washer/dryer; her husband must assist in pre-laundry preparation and gets the laundry ready for her to load (R. at 284, 329).

Although plaintiff indicates that she shops, the ALJ failed to mention that she has to stop and rest or use an in-store electric cart, scooter, or mechanized basket.  Her husband loads and unloads the groceries (R. at 285, 330).  Finally, although plaintiff indicated she reads, watches TV, works on the computer, and plays with her dogs, the ALJ again failed to mention the limitations she set forth in the reports.  Plaintiff stated that she is very limited as to the amount of quality time with the dogs, and that watching TV, the computer or reading is restricted by her inability to be in one positon for extended periods because of pain (R. at 286, 327).

The facts of this case, insofar as the ALJ mischaracterized plaintiff's daily activities, are very similar to those in Sitsler v. Astrue, 410 Fed. Appx. 112, 117-118 (10th Cir. Jan. 10, 2011):

Mr. Sitsler also argues the ALJ
mischaracterized the extent of his daily
activities, ignoring the qualifications and
limitations he consistently reported. The
record reflects that Mr. Sitsler testified
or otherwise reported that he has help from
relatives in caring for his children; he
usually has no energy to do housework; he
makes only simple meals; he shops for 1-2
hours at most; he washes dishes for only a
few minutes; he vacuums only once a week for
a few minutes; and he does not drive very
much. In contrast, the ALJ's findings
regarding Mr. Sitsler's activities included
none of these limitations. We have
criticized this form of selective and
misleading evidentiary review, holding that
an ALJ cannot use mischaracterizations of a
claimant's activities to discredit his
claims of disabling limitations. *See Sisco
v. U.S. Dep't of Health & Human Servs.*, 10
F.3d 739, 742-43 (10th Cir.1993) (ALJ took
claimant's testimony out of context,
selectively acknowledged only parts of her
statements, and presented his findings as
accurate reflections of her statements); *see
also Talbot v. Heckler*, 814 F.2d 1456, 1462,
1464 (10th Cir.1987) (ALJ improperly based
conclusion claimant could do light work on
mischaracterization of his activities).

Although we will not upset an ALJ's
credibility determination that is closely
and affirmatively linked to substantial
evidence, here the ALJ's analysis was flawed
both by his reliance on mischaracterizations
of the evidence and by his failure to
consider the uncontroverted evidence of
claimant's prescription pain medications.
*See Winfrey v. Chater*, 92 F.3d 1017, 1021
(10th Cir.1996) ( "[T]he ALJ's evaluation of
plaintiff's subjective complaints was flawed
by his reliance on factors that were not
supported by the record and by his failure
to consider other factors that were
supported by the record."). Therefore, we
reverse and remand, directing the ALJ to

> properly evaluate the evidence with respect
> to claimant's credibility.

As was the case in <u>Sitsler</u>, the ALJ in this case mischaracterized the extent of plaintiff's daily activities, ignoring the numerous qualifications and limitations she consistently reported.  The ALJ's evaluation of plaintiff's credibility was flawed by his mischaracterization of the evidence.  The court will not speculate regarding the impact of this mischaracterization on the ALJ's RFC findings.  Therefore, the court reverses and remands the decision of the Commissioner. On remand, the Commissioner is directed to properly evaluate the evidence with respect to plaintiff's credibility, and make new RFC findings after giving proper consideration to plaintiff's statements regarding the qualifications and limitations in her daily activities.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 24th day of September 2015, Topeka, Kansas.


___s/ Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge